**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re: <br> PITTSBURGH CORNING CORPORATION | : | Bankruptcy No. 00-22876-TPA |
| Debtor. | : | Chapter 11 |
| PPG INDUSTRIES, INC. | : | |
| Plaintiff, | : | Adversary Proceeding No. 00-2201-TPA |
| v. | : | Doc. No. |
| ARGONAUT INSURANCE COMPANY, et al. | : | Related to Docket Nos. 383, 390, 411 |
| Defendants. | : | |

**BRIEF IN SUPPORT OF RESPONSE OF PPG INDUSTRIES, INC.
TO SAFETY NATIONAL CASUALTY CORPORATION'S MOTION TO DISMISS
AND COMPEL ARBITRATION**

PPG Industries, Inc. ("PPG") respectfully submits this Brief in Support of its Response (Doc. No. 411) ("Response") to the Motion to Dismiss and Compel Arbitration (Doc. Nos. 383 & 390) ("Motion to Dismiss") filed by Safety National Casualty Corporation ("Safety National"). For the reasons set forth below and in the Response, the Motion to Dismiss should be denied because the Court lacks subject-matter jurisdiction over the Amended Complaint and the Adversary Proceeding (and over the motion to compel arbitration). Alternatively, the Motion to Dismiss should be denied because the arbitration provision in the Safety National policy is not enforceable and because this Court lacks authority to grant the relief requested.

## Introduction and Background

Pittsburgh Corning Corporation ("PCC") filed its petition in April 2000. When this Adversary Proceeding was initiated in May 2000 with the filing of the initial Complaint (Doc. No. 1), PPG and the Debtor had competing claims to "Insurance Policies" (defined in the initial Complaint), issued by the insurer Defendants named in that complaint (including the "Certain Insurers"), arising from PPG's and PCC's respective alleged liabilities for exposures to asbestos and asbestos-containing products. PPG filed this Adversary Proceeding.

Shortly after the Adversary Proceeding was initiated, it was stayed pending mediation and negotiations involving PPG, PCC, representatives of asbestos claimants, and many of the Insurer Defendants. The result was a settlement providing billions of dollars for the Pittsburgh Corning Asbestos Personal Injury Settlement Trust ("Trust"). That settlement resolved PPG's and PCC's competing claims to insurance coverage for asbestos liabilities.

On June 9, 2016, PPG satisfied its funding obligation to the Trust by contributing over $1,000,000,000 in cash and stock to the Trust, while the participating insurers provided more than $1,000,000,000 in additional cash to the Trust (with further payments due in the future). Effective that date, PCC released its claims against the participating and the non-participating insurance policies arising from asbestos claims against it, and PPG granted releases to the participating insurers. Shortly thereafter, PPG dismissed with prejudice its claims in the Adversary Proceeding against PCC and against the participating insurers.

What remains at issue in the Adversary Proceeding are PPG's claims against the non-participating insurers, including Safety National. In view of the consummation of the asbestos settlement, those claims now center on PPG's claims against the non-participating insurers for

their appropriate share of the contributions made by or on behalf of PPG to the Trust. Those claims are set forth in PPG's Amended Complaint (Doc. No. 370).

## ARGUMENT

I. **The Court Lacks Subject-Matter Jurisdiction over the Adversary Proceeding.**

   A. **Because the Court Lacks Subject-Matter Jurisdiction over the Adversary Proceeding, Safety National's Motion Is Moot.**

PCC and "Certain Insurers" have separately moved to dismiss the Amended Complaint and the Adversary Proceeding for lack of subject-matter jurisdiction. (Doc. Nos. 379 & 384). In its Responses to those Motions, PPG agreed that subject-matter jurisdiction does not exist and, requested, therefore, that this Court should dismiss the Adversary Proceeding without prejudice. (Doc. Nos. 408 & 410).

The subject-matter jurisdiction analysis should center on the Amended Complaint, which eliminates the Debtor as a defendant and states a new set of claims based on an entirely new set of facts that did not exist when the Adversary Proceeding was initially filed. "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell International Corp. v. United States*, 549 U.S. 457, 473-74 (2007).[1] *See also Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985) (cited by *Rockwell* and holding "[b]ecause the plaintiffs' amended complaint in this case neither makes reference to nor adopts any portion of the original complaint, jurisdiction must be judged solely on the allegations of the amended complaint. The plaintiffs therefore may

---

[1] In so ruling, *Rockwell* distinguished the longstanding federal rule that "the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events." *Mollan v. Torrance*, 22 U.S. 537, 539 (1824).

not rest on the invocation of the [other federal statutes] in the original complaint for establishing jurisdiction"), *and Wellness Community - National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (also cited by *Rockwell* and holding that "our jurisdictional inquiry must proceed on the basis of the First Amended Complaint, not the original one. Although amendments that affect the court's subject matter jurisdiction are rare, for obvious reasons, they plainly can occur").

The Third Circuit has relied on *Rockwell* to hold that in considering standing (which is part of a jurisdictional analysis), "[i]t is the … Amended Complaint that is the operative pleading for standing purposes." *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co.*, 677 F.3d 178, 185 (3d Cir. 2012).[2]

In the present case, therefore, the Court should look to the Amended Complaint to determine whether it has subject-matter jurisdiction. The Amended Complaint does not satisfy the jurisdictional standards of 28 U.S.C. § 1334. It does not assert a claim arising under title 11, nor does it assert a claim "arising in" a case under title 11. Therefore, the Amended Complaint must be tested against the standard for "related to" jurisdiction, the only possible basis for jurisdiction here.

---

[2] In ruling on subject-matter jurisdiction in the unpublished decision *Semulka v. Moschell*, 401 Fed. App'x. 628, 629 (3d Cir. 2010), the court held "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading" (quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)). Likewise, in the unpublished decision *Mollett v. Leicht*, 511 Fed. App'x. 172, 174 (3d Cir. 2013), the court relied on *Rockwell* and held that subject-matter jurisdiction was lacking because "Mollett's amended complaint, which superseded the original … was jurisdictionally defective at the moment it was filed …."

In this post-confirmation context, the applicable test is the "close nexus" test of *Resorts International Financing, Inc. v. Price Waterhouse & Co., LLP (In re Resorts International, Inc.)*, 372 F.3d 154, 166-67 (3d Cir. 2004). The claims asserted in the Amended Complaint do not meet the "close nexus" test because they do not affect "the interpretation, implementation, consummation, execution, or administration of [the] confirmed plan or [any] incorporated litigation trust agreement," *id*. at 168-69, nor do they otherwise have any other "close nexus to the bankruptcy plan or proceeding." *Id*. at 166. Put simply, the claims in the Amended Complaint are unrelated to the Debtor or its estate, and have no effect on the implementation of its plan. Because the Court lacks subject-matter jurisdiction over the Adversary Proceeding, Safety National's Motion to Dismiss should be dismissed as moot.

    **B.**    **Because the Court Lacks Subject-Matter Jurisdiction over the Adversary Proceeding, It Lacks Jurisdiction to Grant Safety National's Motion to Compel Arbitration.**

Safety National seeks to compel arbitration under 9 U.S.C. § 4, which authorizes a "United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties," to issue an order to compel arbitration (if the other requirements of the Federal Arbitration Act are satisfied). A necessary predicate to granting relief under Section 4 is a determination that the court would have jurisdiction over the underlying claim sought to be arbitrated. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 26 n.32 (1983).

Under 28 U.S.C. § 157(a) and 1334(b), this Court's jurisdiction is limited to matters arising under Title 11 or arising in or related to cases under Title 11. For the reasons set forth above, this Court lacks subject-matter jurisdiction over the claims asserted in the Adversary

5

Proceeding (*i.e.*, the underlying "controversy between the parties" for purposes of 9 U.S.C. § 4). Accordingly, the Court lacks jurisdiction to grant Safety National's request to compel arbitration.

II.   **The Court Lacks Jurisdiction to Compel Arbitration under the Federal Arbitration Act.**

    A   **The Court Cannot Compel Arbitration in Missouri.**

Even if this court had subject-matter jurisdiction and Safety National were correct that the Federal Arbitration Act ("FAA") applies, this Court would not have authority to grant Safety National the relief it requests. The FAA dictates that the "hearing and proceedings, under [an arbitration agreement], shall be within the district in which the petition for an order directing such arbitration is filed."[3]

Here, Safety National's proposed order seeks to compel arbitration "pursuant to and in accordance with the terms and conditions of the Safety National Policy." Doc. No. 390-3. The terms of the agreement state that arbitration is "to be held in St. Louis, Missouri." Motion to Dismiss, ¶ 19. In order to compel arbitration "in accordance with the terms of the agreement," this Court would have to compel arbitration outside of its own district in contravention of Section 4. *See Bosworth v. Ehrenreich*, 823 F. Supp. 1175, 1180 (D.N.J. 1993) ("[The contract] provides for arbitration in New York City. However section 4 of the Arbitration Act provides that arbitration must take place 'within the district in which the petition for an order directing such arbitration is filed.' … Therefore, only the federal district court for the Southern District of New York could compel arbitration in that district."). *See also Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974) (finding it was an error for a district court

---

[3] The FAA also requires courts to order the parties to "proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

6

in the Virgin Islands to compel arbitration in New York City). As the Court does not have the authority to grant the relief sought by Safety National, the Court should deny the motion to compel arbitration.

      B.      **The Arbitration Provision Is Outside the Scope of the FAA.**

The arbitration provision in question provides for non-binding arbitration "[a]s a condition precedent to any right of action under this Policy …." The FAA provides that "[a] written provision in … a contract … *to settle* by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). Courts in this Circuit have held that non-binding forms of alternative dispute resolution will not fall within the scope of the FAA when they are unlikely to actually settle the dispute. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 941 F. Supp. 2d 513, 519 (D.N.J. 2005) (finding that the FAA was not applicable to a non-binding arbitration agreement when the parties were likely to contest any decision by the arbitrator). *See also Harrison v. Nissan Motor Corp. in U.S.A.*, 111 F.3d 343 (3d Cir. 1997) (holding that a non-binding arbitration under the Pennsylvania Lemon Law did not fall under the FAA because a claimant could pursue litigation after forty days if the arbitrator had not reached a final decision). Because the Safety National provision does not compel binding arbitration that would settle the controversy between PPG and Safety National, it falls outside the scope of the FAA.

7

**III.     The Arbitration Provision in the Safety National Policy is Unenforceable.**

   **A.     Missouri Law Governs the Validity and Enforceability of the Arbitration Clause in the Safety National Policy.**

In order to compel arbitration under the FAA, the Court must first determine that there is a valid arbitration agreement. To assess an agreement's validity, the Court must first determine which jurisdiction's law governs the arbitration agreement. As this court sits in Pennsylvania, it must apply Pennsylvania's choice-of-law rules to resolve any choice-of-law issues. *E.g., In re Prithvi Catalytic, Inc.*, No. 13-23855-GLT, 2015 WL 1651433, at *7 (Bankr. W.D. Pa. Apr. 8, 2015) (explaining that federal courts apply the choice-of-law rules of the jurisdiction in which they sit).

Pennsylvania has adopted a "flexible approach which combines a relationship and interest analysis" to resolve choice-of-law questions. *Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 688 (3d Cir. 1989). Under this approach, courts must look first at whether there is actually a conflict between the two jurisdictions. *Pac. Employers Ins. Co. v. Glob. Reinsurance Corp. of Am.*, 693 F.3d 417, 432, 436 (3d Cir. 2012) (citing *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 226-27 (3d Cir. 2007)). To determine whether an actual conflict exists, courts should examine the governmental policies underlying each law to determine if there are "actual, relevant differences" which would impair the interests of both jurisdictions and, if so, which jurisdiction has a more compelling interest in applying its law to resolve the specific issue. Courts also look to a number of factors pertaining to the relationship between each jurisdiction and the contract. These factors include: "(1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS

§ 188(2) (1971). "These contacts are to be evaluated according to their relative importance with respect to the particular issue."[4] *Id.* The Court should then apply the law of whichever jurisdiction is most closely connected to the issue with the greatest interest in applying its laws.

Here, a conflict exists between the laws of Missouri and Pennsylvania[5] regarding the enforceability of a contractual arbitration provision like the one at issue. As discussed below, an arbitration provision in an insurance contract is unenforceable under Missouri law but may be enforceable under Pennsylvania law. Because a conflict exists, it is necessary to look at which state has a greater interest in applying its law to this issue.

In the present case, the balance of government interests heavily favors applying Missouri law to resolve this issue. The arbitration provision was drafted and incorporated into the policy by a Missouri insurer and Missouri has an interest in regulating the business of insurers in its own state. The policy also requires arbitration to take place in Missouri and Missouri has a strong public policy (as expressed by the state legislature in § 435.350) prohibiting the mandatory arbitration of insurance disputes.

---

[4] PPG's choice-of-law analysis in this brief is limited to the issue of the enforceability of the arbitration provision. Whether Missouri law applies to the arbitration issue is not dispositive of any other choice-of-law issues concerning coverage or other interpretation of the Safety National policy. The Third Circuit has "repeatedly recognized that the choice-of-law process is issue-specific." *Chemetron Investments, Inc. v. Fid. & Cas. Co. of New York*, 886 F. Supp. 1194, 1199 (W.D. Pa. 1994); *see also Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006); *McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 107 n.16 (Pa. Super. Ct.), *appeal denied,* 130 A.3d 1291 (Pa. 2015).

[5] Safety National does not actually assert that Pennsylvania's law applies to this issue; instead, it argues the FAA applies. Since the FAA would not apply under Missouri law, PPG assumes Safety National is arguing that Pennsylvania law (which would be preempted by the FAA) should apply.

9

Pennsylvania's interest is arguably nonexistent because its arbitration statute does not specifically relate to the business of insurance and will therefore be preempted by the FAA. In addition, the policy underlying the Pennsylvania statute and the FAA was to put arbitration agreements "upon the same footing as other contracts" by abolishing the general rule against judicial enforcement of arbitration agreements. *See Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 119 (Pa. 2007). However, neither law specifically addresses arbitration agreements as they relate to insurance policies. A general policy favoring arbitration is not as compelling as Missouri's more specific interest in prohibiting the enforcement of mandatory arbitration provisions in insurance policies.

### B. The Arbitration Provision Is Invalid and Unenforceable.

Missouri law provides that "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract, **except contracts of insurance** … is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." MO. ANN. STAT. § 435.350 ("§ 435.350") (emphasis added). In claiming that the FAA governs this arbitration provision, Safety National ignores the fact that the FAA is reverse-preempted by the operation of the McCarran–Ferguson Act and § 435.350.

Normally the FAA preempts state laws regarding the enforceability of arbitration agreements in contracts involving commerce. *H.L. Libby Corp. v. Skelly & Loy, Inc.*, 910 F. Supp. 195, 197 (M.D. Pa. 1995) (explaining that the FAA preempts Pennsylvania's statute as long as the contract involves commerce). However, the FAA does not preempt laws regulating the business of insurance if application of the FAA would "invalidate, impair, or supersede" the state law. This is because the FAA itself is preempted by the McCarran-Ferguson Act, which stipulates that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any

10

law enacted by any State for the purpose of regulating the business of insurance … unless such Act specifically relates to the business of insurance ….” 15 U.S.C. § 1012(b).

The FAA is a law of general applicability not specifically relating to the business of insurance; the application of the FAA would invalidate, supersede or impair § 435.350; and, Missouri's legislature enacted § 435.350 for the purpose of regulating the business of insurance. Courts applying Missouri law have repeatedly concluded that the FAA cannot preempt § 435.350's rejection of mandatory arbitration provisions in insurance contracts and Safety National cites no authority in which the FAA was held to preempt § 435.350 in the insurance context. *E.g., Standard Sec. Life Ins. Co. v. West*, 127 F. Supp. 2d 1064, 1067-68 (W.D. Mo. 2000), *aff'd sub nom. Standard Sec. Life Ins. Co. of New York v. West*, 267 F.3d 821 (8th Cir. 2001); *Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London*, No. 96-4173-CV-C-2, 1996 WL 938126, at *2 (W.D. Mo. June 10, 1996); *Sturgeon v. Allied Professionals Ins. Co.*, 344 S.W.3d 205, 213 (Mo. Ct. App. 2011). *See also Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 974 (8th Cir. 2012). Because Missouri law governs this controversy, the arbitration provision found in the Safety National policy is invalid and unenforceable.

**IV.    The Arbitration Provision Does Not Require Binding Arbitration.**

Safety National's Motion to Dismiss and Proposed Order ask the Court to compel PPG to "submit to **binding** arbitration" (emphasis added). Although this Court should not compel arbitration for all of the reasons discussed above, any arbitration under the terms of the Safety National policy must be non-binding.

This precise issue was considered by the 8th Circuit Court of Appeals in *Dow Corning*.

11

*Dow Corning Corp. v. Safety Nat'l Cas. Corp.*, 335 F.3d 742 (8th Cir. 2003). That case is particularly instructive because the court was asked to interpret whether a Safety National policy with identical arbitration language required non-binding arbitration. The court held that it was an error to allow the policy to provide for binding arbitration for multiple reasons.

First, it explained that the policy language (providing that arbitration was "a condition precedent to any right of action under this Policy"), although not conclusive, suggested that arbitration would be non-binding. *Id.* at 745. Second, the court explained that it was aware "of no federal policy favoring *binding* arbitration of insurance coverage disputes" or of any cases in which, as here, an arbitration agreement "*entirely silent on this question*" was construed to require binding arbitration. *Id.* at 746 (emphasis in original). *See also Orlando v. Interstate Container Corp.*, 100 F.3d 296, 301 (3d Cir. 1996) ("[W]here the words 'final,' 'binding,' or 'exclusive' fail to appear … we cannot conclude that they intended to overcome the presumption favoring access to a judicial forum."). Third, the court further held that it was unlikely the parties intended such a one-sided arbitration provision to be binding when the provision required that "*all three* arbitrators be 'active or retired, disinterested officials of insurance or reinsurance companies' and that their decisions be made 'with regard to the custom and usage of the insurance and reinsurance business.'" *Id.* (emphasis in original).

Thus, the court concluded the arbitration provision called only for non-binding arbitration and "[p]arties intending binding arbitration should say so explicitly in the agreement to arbitrate, either by providing that the arbitration award will be 'final and binding' or words to that effect, or by incorporating by reference the rules of [an arbitral body] that expressly provide for binding arbitration." *Id.* at 745.

12

There is no reason that this Court should reach any other conclusion.  The policy's "condition precedent" language is clear on its face that parties may resort to litigation after arbitration.  *See* Doc. No. 411-1, p. 3.  More importantly, the policy is otherwise "ambiguously silent" on the finality of arbitration and the "decidedly pro insurer tilt" of the arbitration provision suggests the parties did not intend for the arbitration to be binding.  *Dow Corning,* 335 F.3d at 746.  Thus, if the Court determines that compelling arbitration is appropriate in this case, PPG respectfully requests that it modify its order to clarify that such arbitration is non-binding.  *See also Orlando*, 100 F.3d at 300 (recognizing that arbitration may be mandatory but not final).

Therefore, PPG respectfully requests that the Court deny Safety National's Motion to Dismiss and Compel insofar as it seeks to compel arbitration.


Dated:  August 22, 2016                                             Respectfully submitted,


*/s/ David F. McGonigle*
David F. McGonigle
PA ID #61824
Michael S. Nelson
PA ID #78846
David M. Aceto
PA ID # 44718
Mary L. Thibadeau
PA ID # 306452

K&L GATES LLP
K&L GATES CENTER
210 Sixth Avenue
Pittsburgh, PA  15222
Telephone: (412) 355-6500
Fax: (412) 355-6501
david.mcgonigle@klgates.com
michael.nelson@klgates.com

13

Document    Page 14 of 14

david.aceto@klgates.com
mary.thibadeau@klgates.com

Attorneys for PPG Industries, Inc.